IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| T.N.D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil No. 21-13898 (RMB) <br><br> OPINION |

**BUMB**, U.S. District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits. For the reasons set forth below, the Court shall affirm the decision of the Administrative Law Judge ("ALJ").

I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff, whose date of birth is May 8, 1970, was 47 years old on his alleged onset date of May 15, 2017. [Docket No. 7 (referred to hereafter as "Plaintiff's Brief"), at 5 (citations omitted).] Plaintiff has past relevant work experience as a mechanic, and claims disability status, in part, from his history of thyroid cancer and resulting treatment, chronic kidney disease, mood disorder, hypertension, biliary colic, angina, hepatitis B and C, obstructive sleep apnea,

1

beck/neck pain, and obesity. [Docket No. 4 (referred to hereafter as the "Administrative Record" or "AR"), at 14–17.]

Plaintiff applied for disability insurance benefits ("DIB") and supplement security income ("SSI"), respectively, but was denied upon initial consideration, as well as upon reconsideration. [Plaintiff's Brief at 4.] On October 2, 2020, a hearing was held before Administrative Law Judge ("ALJ") Nicholas Cerulli by telephone during the COVID-19 pandemic. [AR at 12.] At the hearing, Plaintiff was represented by attorney Alan Polonsky and was assisted by a Vietnamese interpreter. [*Id.*] Impartial vocational expert, Sakinah Milik, also attended and testified by phone during the hearing. [*Id.*]

On November 27, 2020, the ALJ issued an unfavorable decision, denying Plaintiff's application for DIB and SSI. [*Id.* at 28.] Plaintiff appealed the ALJ's decision internally to the Appeals Council, but his appeal was denied. [*Id.* at 1.] On July 20, 2021, Plaintiff commenced the present action, requesting judicial review of the Commissioner's final decision and invoking the jurisdiction of this Court pursuant to 42 U.S.C. § 405(g). [Docket No. 1.]

II.     **THE ALJ'S DECISION**

The ALJ determined that Plaintiff was not disabled for purposes of social security benefits, finding him capable of making an adjustment to work other than his past relevant work as a mechanic. [AR at 28.] At step one of the five-step, sequential analysis, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since his alleged onset date of May 15, 2017. [*Id.* at 14.] Moving on to step two, the ALJ determined that Plaintiff suffers from three "severe" impairments that, among other things, significantly limit his ability to perform basic work activities, including status post thyroidectomy secondary to papillary thyroid carcinoma with residuals of chronic acquired hypothyroidism and post-surgical hypoparathyroidism; chronic kidney disease; and mood disorder. [*Id.* at 15.] The ALJ also discussed several of Plaintiff's other impairments at step two, explaining that such impairments were not "severe" for purposes of social security benefits, including hypertension, biliary colic, angina, hepatitis B and C, obstructive sleep apnea, back/neck pain, and obesity. [*Id.* at 15–17.]

At step three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 17.] Turning to step four, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in [20 C.F.R. §§ 404.1567(b) and 416.967(b),] except that he can perform work related activities involving frequent climbing, balancing, stooping, kneeling, crouching, and crawling; avoid all exposure to hazards such as unprotected heights and moving machinery; unskilled work involving routine and repetitive tasks; occasional changes in the work setting; no quota or production based work but rather goal oriented work; and occasional interaction with coworkers, supervisors, and the public.

[*Id.* at 21.]

Next, the ALJ determined that Plaintiff could not return to his past relevant work as a mechanic based on the RFC assessment since such work is at a medium

3

level of exertion and is skilled work. [*Id.* at 27.] However, the ALJ found that Plaintiff could perform the requirements of other representative occupations, consistent with the testimony of the vocational expert and the limitations set forth in the RFC assessment, including as a garment sorter, laundry sorter, and potato chip sorter. [*Id.* at 28.] Finding that a significant number of such occupations exists in the national economy, the ALJ ultimately concluded at the final step of the five-step, sequential analysis that Plaintiff was "not disabled under section 216(i) and 223(d) of the Social Security Act" for purposes of DIB, and "not disabled under section 1614(a)(3)(A)" of the Act for purposes of SSI. [*Id.*]

### III.   STANDARD OF REVIEW

When reviewing a final decision of an ALJ regarding disability benefits, the Court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). "Substantial evidence" means "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer*, 186 F.3d at 427 (citations omitted). In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *see also Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262

(*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(A). The Act further states the following:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382(c)(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's alleged disability status for purposes of social security benefits, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work

> activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201-02 (3d Cir. 2019) (alterations in original).

## IV. ANALYSIS

On appeal, Plaintiff asserts that three of the ALJ's findings, in particular, were not supported by substantial evidence: (1) the ALJ's finding that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 at step three; (2)

6

the limitations set forth in the RFC assessment at step four; and (3) the ALJ's finding that Plaintiff could perform alternative work at step five. The Court considers each of Plaintiff's arguments in turn.

### A. The ALJ Correctly Determined that Plaintiff Does Not Meet the Criteria of Any "Listed" Impairment at Step Three

Plaintiff first challenges the ALJ's finding at step three of the sequential analysis that Plaintiff did not "suffer from an impairment or impairments that met the requirements of the Listings of Impairments" and argues that such finding is "not supported by an adequate explanation." [Plaintiff's Brief at 7.] The "Listings" referred to by Plaintiff are set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, and are used to establish *per se* disability. In other words, the Listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background" at steps four and five of the sequential analysis. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). However, "[f]or a claimant to show that his impairment matches a [L]isting, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Essentially, Plaintiff accuses the ALJ of merely reciting the applicable requirements for each Listing he considered followed by a conclusory statement that the requirements were not met. [Plaintiff's Brief at 10.] However, the Court does not agree with Plaintiff's characterization of the ALJ's decision and finds that the ALJ considered the relevant evidence of record in support of his conclusion that none of

7

Plaintiff's physical or mental impairments satisfied the regulatory requirements of any "Listed" impairment.

> 1. **Substantial Evidence Supports the ALJ's Finding that None of Plaintiff's Physical Impairments Constituted *Per Se* Disability**

With respect to Plaintiff's physical impairments, the ALJ considered the applicable medical requirements of Listings 6.05 (chronic kidney disease), 9.00 (endocrine disorders), and 13.09 (cancer of the thyroid gland). [AR at 17–19.] For each of these Listing, the ALJ explained which specific criteria Plaintiff failed to prove. For Listing 6.05, the ALJ explained that Plaintiff's blood tests did not include laboratory findings sufficient to establish the requisite severity of "reduced glomerular filtration" as required by Listing 6.05A. [*Id.* at 18.] Under Listing 9.00, the ALJ explained that he is "required to evaluate impairments that result from endocrine disorders under the listing for other body systems," but because the ALJ found that "none of the signs noted related to other Listings," Listing 9.00 was not satisfied. [*Id.* at 18–19.] Finally, the ALJ considered Listing 13.09 and found that "none of the specific requirements" of that Listing had been met either because "there is no indication that his cancer spread beyond regional lymph nodes," as required by the regulations. [*Id.* at 19.]

The Commissioner is correct that Plaintiff "does not dispute the evidence cited by the ALJ relating to Listings 6.05, 9.00, and 13.09," and nowhere in his brief does Plaintiff "cite to any medical evidence to support that he satisfied all the criteria" of any of the above Listings. [Docket No. 14 (hereafter referred to as the

"Commissioner's Brief"), at 11).] Plaintiff's lack of specificity and failure to show how the relevant medical evidence of records proves that his physical impairments qualify as a "Listed" impairment is fatal to his argument. The Court finds that the ALJ's reasoning is supported by the record he cites, and thus, supported by substantial evidence.

      **2.    Substantial Evidence Supports the ALJ's Finding that None of Plaintiff's Mental Impairments Constituted *Per Se* Disability**

The ALJ next considered Plaintiff's mental impairments and found that Plaintiff failed to prove the criteria of the final Listing considered at step three, Listing 12.04. [AR at 19.] The ALJ considered each of the four "paragraph B" and found that Plaintiff had a moderate limitation in each of the four broad areas of functioning measured thereby: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing oneself. [*Id.* at 19–20.] Although the ALJ cited many relevant treatment records and progress notes in support of his findings regarding the "paragraph B" criteria, Plaintiff alleges that the evidence cited does not support his findings. The Court disagrees.

In understanding, remembering, or applying information, the ALJ acknowledged Plaintiff sometimes had memory problems and "borderline judgment," but also that his memory was normal at times. [AR at 19 (*citing* Exs. 7F, 8F).] In the areas of interacting with others and managing oneself, the ALJ noted that Plaintiff did not complete an Adult Functioning Report and thus alleged no

limitations regarding both broad areas of functioning and their corresponding "paragraph B" criteria. [*Id.* at 19–20.] Regardless, the ALJ still considered the relevant evidence and found a moderate limitation in both areas of functioning. [*Id.*] In the final area, the ALJ found that Plaintiff had a moderate limitation concentrating, persisting, and maintaining pace based on the record as a whole, including treatment records from Cooper Neurology in February 2019 where Plaintiff exhibited normal concentration. [*Id.* at 20 (*citing* Ex. 7F).] After determining that the "paragraph B" criteria were not satisfied—because Plaintiff did not have one extreme limitation or two marked limitations in the four broad areas of functioning—he correctly determined that "[t]here is also no evidence to satisfy the requirements of the 'C' listing under 12.04," and therefore, none of Plaintiff's mental impairments constituted *per se* disability under the Listing. [*Id.*]

      The Court finds that the ALJ's provided a rational explanation that is consistent with the records he cited in support of the conclusion that none of Plaintiff's impairments rose to the level of severity of any "Listed" impairment. It is not the Court's role on appeal to reweigh the evidence of record. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006) (not precedential) ("[w]here evidence in the record is susceptible to more than one rational interpretation, we must accept the Commissioner's conclusions") (*citing Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted)). Thus, Plaintiff's first argument fails.

10

### B.     The RFC Assessment is Supported by Substantial Evidence

Plaintiff's second argument is that the RFC assessment "fails to account for all of her [sic] bona fide impairments and is not supported by either an adequate rationale or by substantial evidence." [Plaintiff's Brief at 19.] More specifically, Plaintiff alleges that the ALJ should have incorporated more restrictive limitations in the RFC assessment based on Mr. Duong's own testimony regarding fatigue and weakness, as well as his mental impairments. [*Id.* at 19–22.]

The Court finds that Plaintiff has again mischaracterized the ALJ's decision and agrees with the Commissioner that the comprehensive, six-page analysis provided by the ALJ in support of the RFC assessment is supported by substantial evidence. Plaintiff acknowledges that his papillary thyroid cancer and resulting treatment is sometimes "considered to be the 'good cancer,'" but that fatigue and weakness are still common side effects he experiences. [*Id.* at 19.] The ALJ noted that after Plaintiff "underwent radiofrequency ablation . . . [he] was confused about his medication and was not taking his thyroid medication as suggested." [AR at 25 (*citing* Ex. 10F).] The ALJ further explained that "[t]he medical record suggests that when the claimant's medications are adjusted and he takes the medication within treatment suggestion parameters that many of his complaints about fatigue, etc. will resolve." [*Id.*] The Court is not persuaded by Plaintiff's suggestion that the ALJ erred in assigning less weight to Plaintiff's own testimony regarding the need for limitations in the RFC assessment to account for his fatigue and weakness. The ALJ

11

expressly considered these impairments and cited relevant medical evidence to support his conclusion.

Plaintiff's other argument that his mental impairments warrant more restrictive limitations in the RFC assessment is based on the ALJ's finding that the opinion of Consultative Examiner (Psychiatrist) Barry Kardos, PhD was not persuasive. The ALJ acknowledged that Dr. Kardos's opinion was consistent with his own medical findings, but that it was "not consistent with other medical evidence of record." [*Id.* at 26.] More specifically, the ALJ explained that Plaintiff "admitted to Dr. Kardos that he had never treated with a mental health professional," and that Plaintiff's "objective examinations varied over time." [*Id.*] Although Dr. Kardos found that Plaintiff "endorsed depressive symptoms" during his examination, the ALJ cited contrary evidence in the record that showed "his depression score was '0' on multiple occasions in 2020 suggesting that his primary care physician was not aware of any mental symptoms to refer him for treatment." [*Id.* at 26–27 (*citing* Ex. 11F).]

Again, it is squarely the role of the ALJ—and not the Court—to weigh the evidence of record and set the parameters in the RFC assessment. Here, the record contains inconsistent medical findings, but in explaining why he afforded certain medical opinions less weight, the ALJ provides a rational explanation that is consistent with the record overall. Therefore, the Court finds Plaintiff's second argument is unpersuasive.

### C. The ALJ's Finding at Step Five that Plaintiff Could Engage in Alternative Work is Supported by Substantial Evidence

Plaintiff's third and final argument is that the ALJ's finding at step five that Plaintiff could engage in alternative work—as a garment sorter, laundry sorter, or potato chip sorter—is not supported by substantial evidence. [Plaintiff's Brief at 22–25.] Plaintiff contends "[i]t is axiomatic that if the residual functional capacity is not accurate, then any determination as to alternative work activity is invalid." [*Id.* at 22 (citations omitted).] However, the Court disagrees. Plaintiff's argument essentially rehashes his previous challenge to the RFC assessment, which the Court already determined is supported by substantial evidence. *Infra.* § IV(B).

The RFC assessment includes a limitation involving "no quota or production-based work but rather goal oriented work," which Plaintiff argues would preclude work in the potato chip sorter role identified by the vocational expert, Sakinah Malik ("Malik"). [Plaintiff's Brief at 23.] When cross-examined by Plaintiff's attorney at the hearing before the ALJ, Malik was asked about the potato chip sorter role she had identified as suitable work based on the RFC assessment—specifically, whether it involves production-pace work or goal-oriented work. [AR at 56.] Ms. Malik provided the following response:

> I have seen that job done both ways. Both ways, meaning that the person would be in a -- would be part of the part of the assembly line but that's separate, from the assemble line. And they would be observing the chips as they go by. But I also have seen that job done where the person is actually part of the assembly line. The one I was [INAUDIBLE], speaking of was the one where the person is off to the side, looking at the chips.

13

[*Id.* at 56–57.] Ms. Malik then went on to clarify that the potato chip sorter role she was referring to, unlike production-based assembly line work is "more at the level of inspection." [*Id.* at 57.]

On appeal, Plaintiff points to another restriction in the RFC assessment limiting Plaintiff to simple and repetitive work, suggesting work that "is both simple and repetitive is one that is done one way, over and over again" and when performing such work "[n]o such employee sets their own pace." [Plaintiff's Brief at 23.] The Court rejects Plaintiff's suggestion that the RFC is internally inconsistent—whether work is production-pace (like on an assembly line) and whether work involves simple and repetitive tasks involve separate inquiries. Obviously, these inquiries may overlap in some respects. Regardless, the ALJ found that Plaintiff could also perform two other occupations (as garment sorter or laundry sorter) and that a significant number of these other jobs also exists in significant numbers in the national economy. [AR at 28.] To put it differently, whether Plaintiff could work as a potato chip sorter is irrelevant to the ALJ's ultimate finding at step five that alternative work exists which Plaintiff can perform. Therefore, the Court is satisfied that the ALJ's finding at step five is supported by substantial evidence. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

Plaintiff finally argues that the jobs identified by the vocational expert are not

consistent with the limitation in the RFC assessment of only "occasional interaction with coworkers, supervisors, and the public." [Plaintiff's Brief at 23–24.] However, the Court agrees with the Commissioner that the vocational expert testified that each of the jobs she identified comported with the limitations in the RFC assessment. [AR at 53–54.] On cross examination, Plaintiff's attorney attempted to expand on this limitation in the RFC assessment regarding only occasional interactions with others (*i.e.,* no more than one-third of the workday), asking the vocational expert if this "indicate[s] that at least at some point during the day" Plaintiff would not respond appropriately to supervision. [*Id.* at 57.] In answering this question, the vocational expert essentially agreed, as well as agreed that failure to respond appropriately to supervision could potentially preclude competitive employment altogether. [*Id.* at 57–58.]

However, the specific limitation included by the ALJ in the RFC assessment was not that Plaintiff is unable to respond appropriately to supervision, only that no more than a third of Plaintiff's workday should require interaction with others. It is not the role of Plaintiff's counsel to attempt to expand the limitations set forth by the ALJ in the RFC assessment, and the Court rejects this argument that is just a matter of semantics. Plaintiff also fails to identify any contrary evidence of record that supports the argument that the RFC assessment should have been more limited in terms of Plaintiff's ability to respond appropriately to supervision. That is not the same thing as how frequently one can be expected to interact with others while at

work. It is nothing more than a red herring. As testified to by the vocational expert, occasional supervisor interaction on its own does not preclude all work. Accordingly, Plaintiff final argument fails.

## V.   CONCLUSION

The Court concludes that the ALJ's decision is supported by substantial evidence and that each of the arguments raised by Plaintiff on appeal are unpersuasive. For the foregoing reasons, the Court will affirm the decision of the ALJ. An accompanying Order as of today's date shall issue.

Date: <u>June 22, 2022</u>                              <u>s/Renée Marie Bumb</u>
                                                        Renée Marie Bumb
                                                        U.S. District Judge